**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EDYTHE BELLISSIMO and JERRY LIVINGSTON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MARQUIS SOFTWARE SOLUTIONS, INC. and THE FIRST NATIONAL BANK of PENNSYLVANIA,

Defendants.

Case No:

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Edythe Bellissimo and Plaintiff Jerry Livingston, individually and on behalf of all others similarly situated, by and through their undersigned counsel, D. Aaron Rihn, Esquire; Sara J. Watkins, Esquire; Stanley D. Ference IV, Esquire; and the law firm of Robert Peirce & Associates, P.C., and claim damages of the Defendants, Marquis Software Solutions, Inc. ("Marquis") and The First National Bank of Pennsylvania ("First National Bank" or "FNB"), upon causes of action, the following of which are statements:

## INTRODUCTION

1. Plaintiffs bring this action against Defendants Marquis and First National Bank for the injuries Plaintiffs and others similarly situated sustained as a result of Defendants inadequately storing individuals' Personal Identifiable Information ("PII").

2. Marquis is a is a software firm that provides "marketing and compliance solutions" to "700+ banks and credit unions[.]"[1]

3. First National Bank is a financial institution headquartered in Pittsburgh, Pennsylvania, operating in seven states and the District of Columbia.[2]

4. Plaintiffs and Class Members are current and former customers of First National Bank, who received banking services from First National Bank prior to the Data Breach.

5. As a condition of obtaining First National Bank services, Plaintiffs and Class Members were required to entrust their sensitive, non-public PII to First National Bank.

6. First National Bank is a client of Marquis and contracted Marquis to provide software and data management and analytics services.

7. To provide their contracted services to First National Bank, First National Bank provided Plaintiffs' and Class Members' sensitive, non-public PII to Marquis, who in turn stored and used Plaintiffs' and Class Members' PII.

8. On or around August 14, 2025, cybercriminals hacked into the network systems of First National Bank's service provider and third-party vendor, Marquis, and stole Plaintiffs' and Class Members' sensitive PII stored therein, including their full names, addresses, phone numbers, Social Security numbers, financial account information, and dates of birth causing widespread injuries and damages to Plaintiffs and Class Members ("Data Breach" or "Breach"). (See Data Breach Notice attached hereto as Exhibit 1.)

9. As result of the Data Breach, approximately 217,000 of customers of financial institutions who contracted with Marquis were impacted by the Breach. Now, Plaintiffs' and the

[1] About Us, MARQUIS, https://gomarquis.com/who-we-are/about-us (last visited Dec. 3, 2025).
[2] First National Bank, Corporate Overview, fnb-online.com, https://www.fnb-online.com/about-us/corporate-information/corporate-overview.

Class Members' PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

10. Despite discovering the Breach on or about August 14, 2025, First National Bank and Marquis have delayed alerting victims of the Data Breach. Upon information and belief, Defendants have yet to finish sending notice of the Breach to affected individuals.

11. First National Bank failed to adequately protect Plaintiffs' and Class Members' PII and failed to ensure that its third-party vendor, Marquis, would maintain adequate safeguards to protect Plaintiffs' and Class Members' PII.

12. Upon information and belief, due to Defendants' negligence, cybercriminals have accessed and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

13. In sum, Plaintiffs and the Class Members will face an imminent risk of fraud and identity theft for the rest of their lives because: (i) Defendants failed to protect Plaintiffs' and the Class' PII, allowing a large and preventable Data Breach to occur; (ii) the cybercriminals who perpetrated the Breach accessed PII that they will sell on the dark web (if they have not already) because that is the modus operandi of cybercriminals who perpetrate breaches such as this; and (iii) Defendants failed to timely notify Plaintiffs and the Class of the Data Breach.

14. Plaintiffs bring this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## PARTIES

***a. Plaintiffs***

15. Plaintiff Edythe Bellissimo (hereinafter "Plaintiff Bellissimo" or "Mrs. Bellissimo") is an adult individual domiciled in the State of Florida. Mrs. Bellissimo is a customer of Defendant First National Bank.

16. Defendant First National Bank collected, stored, and maintained Mrs. Bellissimo's PII as part of its business practices and provided Mrs. Bellissimo's PII to its third-party vendor, Defendant Marquis.

17. Upon information and belief, Mrs. Bellissimo's PII was accessed and exfiltrated in the Data Breach and Mrs. Bellissimo is therefore a victim of the Breach.

18. Plaintiff Jerry Livingston (hereinafter "Plaintiff Livingston" or "Mr. Livingston") is an adult individual domiciled in the Commonwealth of Pennsylvania. Mr. Livingston is a customer of Defendant First National Bank.

19. Defendant First National Bank collected, stored, and maintained Mr. Livingston's PII as part of its business practices and provided Mr. Livingston's PII to its third-party vendor, Defendant Marquis.

20. Upon information and belief, Mr. Livingston's PII was accessed and exfiltrated in the Data Breach and Mr. Livingston is therefore a victim of the Breach.

***b. Defendants***

21. Defendant The First National Bank of Pennsylvania is a nonprofit corporation incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business at 626 Washington Place, Pittsburgh, Pennsylvania 15219.

22. Defendant Marquis Software Solutions, Inc., is a corporation incorporated in Texas with its principal place of business at 6509 Windcrest Drive, Suite 170, Plano, Texas 75024. The registered agent for service of process is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative Class Members, and minimal diversity exists because Plaintiffs and Defendant Marquis are citizens of different states.

24. This Court has personal jurisdiction over Defendants because First National Bank is headquartered and has its principal place of business in the Western District of Pennsylvania, and because both Marquis and First National Bank regularly conduct business in the Commonwealth of Pennsylvania, have sufficient minimum contacts in the Commonwealth of Pennsylvania, and purposely availed themselves to the Courts in this District.

25. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) because the principal place of business of First National Bank is in this District and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### *a. First National Bank*

26. First National Bank offers a wide range of services to consumers as well as businesses. These services include, but are not limited to, commercial banking, consumer banking, and wealth management solutions.[3]

---

[3] Nature of Operations, Form 10-Q, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/37808/000003780825000135/fnb-20250930.htm

27. First National Bank's Commercial banking solutions include "corporate banking, small business banking, investment real estate financing, government banking, business credit, capital markets and lease financing."[4] FNB's Consumer banking services provide "a full line of consumer banking products and services, including deposit products, mortgage lending, consumer lending and a complete suite of mobile and online banking services."[5] Lastly, FNB's wealth management services include "asset management, private banking and insurance."[6]

28. First National Bank's market coverage spans several major metropolitan areas including Pittsburgh, Pennsylvania; Baltimore, Maryland; Cleveland, Ohio; Washington, D.C.; Charlotte, Raleigh, Durham and the Piedmont Triad (Winston-Salem, Greensboro and High Point) in North Carolina; and Charleston, South Carolina.[7]

29. First National Bank has $50 billion in assets and approximately 350 banking offices with operations throughout Pennsylvania, Ohio, Maryland, West Virginia, North Carolina, South Carolina, Virginia and the District of Columbia.[8]

30. In order for a customer to open an account with First National Bank, First National Bank requires any customer to provide them with "[the customer's] name, address, date of birth, and other information that will allow [First National Bank] to identify [the customer]."[9]

31. First National Bank promises customers that "At FNB, your privacy and the security of your information have always been our top priorities. We have processes, systems and expert teams in place to monitor and protect your accounts[.]"[10]

---

[4] Id.
[5] Id.
[6] Id.
[7] Corporate Overview, First National Bank, https://www.fnb-online.com/about-us/corporate-information/corporate-overview.
[8] Id.
[9] Compliance, First National Bank, https://www.fnb-online.com/about-us/corporate-information/compliance.
[10] Security, First National Bank, https://www.fnb-online.com/security.

32. Specifically, First National Bank promises customers that FNB "employs various physical, electronic and procedural measures, *including education and training of our personnel*, which are designed to reasonably and appropriately protect Personal Information from loss, misuse or unauthorized access, disclosure, alteration or destruction. *These measures include limiting access and using industry best practice controls such as firewalls and encryption for Personal Information*." (emphasis added).

33. The information provided by customers is then used and shared by First National Bank in its business practices because "all financial companies need to share customers' personal information to run their everyday business."[11]

34. First National Bank is able to share a customer's sensitive and non-public PII with its affiliates and with third-parties under certain circumstance.[12]

35. First National Bank "will only share information about [a customer] with third-parties who perform services or functions for [First National Bank] in conjunction with [First National Bank] services (such as [First National Bank] email or marketing vendors or a third-party payment processor) if [First National Bank] have a contractual agreement with the other party which prohibits them from disclosing or using the information other than for the services they provide [First National Bank]."[13]

36. The third-party servicers to whom First National Bank discloses a customer's sensitive and non-public PII is done "under strict confidentiality and use restrictions[.]"[14]

---

[11] F.N.B. Corporate Privacy Policy, First National Bank, https://www.fnb-online.com/privacy.
[12] Id.
[13] Id.
[14] Id.

***b. Marquis Software Solutions***

37. Marquis is a service provider that provides compliance and marketing software solutions to financial institutions throughout the United States. Marquis offerings include data analytics, consulting, customer relationship management, and direct-marketing services.[15]

38. Marquis collects the following categories of personal information for its financial institution clients:[16]

> a. Identifiers (for example, name, email address, postal address, phone number, and social security number;
>
> b. Bank Account, Mortgage, Credit Card, Loan, and Insurance Information for Accounts held at a Financial Institutions that uses Marquis (including account numbers, expiration dates, loan balances, credit limits, and related information); and,
>
> c. Demographics/Account Application Information (i.e., birthdate and age, gender, employment, education, earnings, and other information that may have been provided to a financial institution when a customer applied for an account, loan, or insurance product).

39. Marquis processes and maintains personal information received from its financial institution clients to perform contractual obligations to its financial institution clients as well as to "prevent, detect, protect against, or respond to security incidents, fraud or malicious or deceptive practices, or other illegal activity"[17] and "preserve the integrity or security of systems."[18]

40. To protect the sensitive, non-public information of its financial institutions' clients, Marquis builds security into its services and "*use commercially reasonable and appropriate*

---

[15] Marquis, Privacy Policy, gomarquis.com, https://gomarquis.com/privacy-policy.
[16] Id.
[17] Id.
[18] Id.

*safeguard*s to secure and protect the privacy, accuracy, and reliability of your information and to protect it from unauthorized access, alteration, disclosure, or destruction[.]"[19] (emphasis added).

***c. Defendants Partnership***

41. Plaintiffs and Class Members are current and former customers of First National Bank.

42. As a condition of receiving First National Bank services, Plaintiffs and Class Members were required to provide First National Bank with their sensitive and non-public PII.

43. As such, First National Bank acquired a significant amount of highly sensitive PII from its customers, including the acquisition of the PII of Plaintiffs and Class Members.

44. As part of its business practices, First National Bank entered into a contract with Marquis for software and data management and analytics.

45. As part of its business practices and contractual agreement, First National Bank provided Marquis with Plaintiffs' and Class Members' PII.

46. Defendants obtained, collected, used, and derived a benefit from the PII of Plaintiffs and Class Members. Defendants use the PII they collect to provide services, making a profit therefrom. Defendants would not be able to obtain revenue if not for the acceptance and use of Plaintiffs' and Class Members' PII.

47. Defendants used Plaintiffs' and Class Members' PII to operate their businesses and derive economic benefits, including for analytics and marketing purposes supported by the third-party vendor, Marquis, and could not operate their business without that data.

[19] Id.

48. By collecting Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties to Plaintiffs and the Class Members to protect and safeguard their PII from unauthorized access and intrusion.

49. First National Bank owed a duty to protect Plaintiffs and Class Members from the harm of Marquis', First National Bank's third-party vendor, insufficient data security and the consequential exposure of PII would cause, because such harm was foreseeable and reasonably preventable.

50. First National Bank knew Marquis was storing valuable, sensitive, non-public PII and that, as a result, Marquis' systems would be an attractive target for cybercriminals.

51. First National Bank also knew that any breach of Marquis' network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the tens of thousands of individuals whose PII was compromised, as well as intrusion into their private and sensitive financial matters.

52. First National Bank's duty to protect Plaintiffs and Class Members from the foreseeable risk of injury that inadequate data protection and unauthorized exposure of their PII would obligate First National Bank to require and ensure their third-party vendors had implemented reasonable practices to keep Plaintiffs' and Class Members' sensitive PII confidential and securely maintained, used and disclosed it for necessary and authorized purposes only, deleted the data from network systems or applications when no longer necessary for legitimate business purposes, and trained employees on reasonable cybersecurity red flags and protection techniques.

53. The PII First National Bank shared with Marquis, which Marquis stored on its network systems when the Data Breach occurred, included the unencrypted PII of Plaintiffs and Class Members.

54. First National Bank failed to ensure that the third-party vendor, Marquis, had the adequate safeguards to protect Plaintiffs' and Class Members' PII.

55. Marquis failed to ensure its safeguards were adequate to protect Plaintiffs' and Class Members' PII.

56. In sum, Defendants negligently failed to secure Plaintiffs' and Class Members' PII.

***d. The Data Breach***

57. On or around November 25, 2025, Marquis began notifying Plaintiffs and Class Members that on August 14, 2025, Marquis "identified suspicious activity on our networks and later determined that it was the result of a cybersecurity incident."

58. Upon investigating this cybersecurity incident, Marquis determined "that an unauthorized third party accessed our networks and may have accessed and acquired certain files from our systems."

59. Marquis informed Plaintiffs and Class Members that Marquis "determined that the following data of yours was included in the copied files: name, date of birth and Social Security number."

60. Despite Defendant's investigation of the Data Breach concluding in October 2025, Defendant failed to timely notify Plaintiffs and Class Members of the Data Breach.

61. Omitted from its statement and notice letters were the details of the root cause of the Data Breach, the identity of the perpetrators that accessed and exfiltrated PII, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with regulators or Plaintiffs and Class Members, who retain a vested interest in ensuring that their information remains protected.

62. Marquis' Notice of Data Breach amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

63. By collecting Plaintiffs' and the Class Members' PII, Defendants assumed legal and equitable duties to Plaintiffs and the Class Members to protect and safeguard their PII from unauthorized access and intrusion.

64. First National Bank owed a duty to protect Plaintiffs and Class Members from the harm of Marquis', First National Bank third-party vendor, insufficient data security and the consequential exposure of PII would cause, because such harm was foreseeable and reasonably preventable.

65. First National Bank knew Marquis was storing valuable, sensitive, non-public PII and that as a result, Marquis' systems would be an attractive target for cybercriminals.

66. First National Bank also knew that any breach of Marquis' network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the tens of thousands of individuals whose PII was compromised, as well as intrusion into their private and sensitive financial matters.

67. First National Bank's duty to protect Plaintiffs and Class Members from the foreseeable risk of injury that inadequate data protection and unauthorized exposure of their PII would obligate First National Bank to require and ensure their third-party vendors had implemented reasonable practices to keep Plaintiffs' and Class Members' sensitive PII confidential and securely maintained, used and disclosed it for necessary and authorized purposes only, deleted

the data from network systems or applications when no longer necessary for legitimate business purposes, and trained employees on reasonable cybersecurity red flags and protection techniques.

68. First National Bank could and should have prevented this Data Breach by ensuring the files and servers containing Plaintiff's and Class Members' PII were properly secured and encrypted but failed to do so.

69. The PII First National Bank shared with Marquis, which Marquis stored on its network systems when the Data Breach occurred, included the unencrypted PII of Plaintiffs and Class Members.

70. Moreover, First National Bank could have prevented this Data Breach by examining Marquis' cybersecurity protocols and ensuring vulnerabilities were identified and addressed and reasonable safeguards were continuously maintained but failed to do so.

71. Marquis failed to ensure its safeguards were adequate to protect Plaintiffs' and Class Members' PII.

72. Defendants' deficient security for customers' data caused and allowed criminals to target and take files containing Plaintiffs' and Class Members' inadequately protected, unencrypted PII from First National Bank's third-party vendor's possession through the Data Breach.

73. Plaintiffs further believe that their PII and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyberattacks of this type.

74. All in all, Defendants failed to take the necessary precautions required to safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access and exploitation.

75. Defendants' actions represent a flagrant disregard of the rights of Plaintiffs and the Class, both as to privacy and property.

### *i. Defendants Failed to Prevent, Identify, and Timely Report the Data Breach*

76. Marquis admits that an unauthorized third party accessed its network. Marquis failed to take adequate measures to protect its computer systems against unauthorized access.

77. Additionally, First National Bank failed to take adequate measures to ensure that Marquis protected, and continued to protect, its computer systems against unauthorized access.

78. The PII that Defendants allowed to be exposed in the Data Breach is the type of PII that Defendants knew, or should have known, would be the target of cyberattacks.

79. As financial institutions and third-party vendors in possession of consumers' PII, Defendants knew, or should have known, of the foreseeable consequences if vendor's network systems were breached, like Maquis.

80. The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[20]

81. Due to the increasing risk of cyberattacks of this magnitude, the Cybersecurity and Infrastructure Security Agency (hereinafter referred to as "CISA") has created an official alert and statement page, often partnering with the Federal Bureau of Investigation, that aims to guard stakeholders against the continued growth of ransomware threats.[21]

82. Due to this, it reasonably can be assumed that the increase in cybersecurity attacks and the open concern for future attacks by government organizations, was widely understood by the public and to all companies in the Defendants' industry, which includes the Defendants.

---

[20] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-todo/74441060007/.

[21] See Official Alerts & Statements – CISA, (CISA, 2024), available at: https://www.cisa.gov/stopransomware/official-alerts-statements-cisa

83. Moreover, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.[22]

84. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and Defendants.

85. As custodians of PII, Defendants knew, or should have known, the importance of safeguarding the PII entrusted to them by Plaintiffs and Class Members, and of the foreseeable consequences if their data security systems were breached, including the significant costs imposed on Plaintiffs and Class Members as a result of a breach.

86. Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

87. The CISA suggests that to protect your system from potential cyberattacks, Defendants should or could have established:[23]

a. Control access;

b. Harden credentials;

c. Establish centralized log management;

d. Use antivirus solutions;

e. Employ detection tools;

f. Operate services exposed on the internet-accessible hosts with secure configurations; and,

---

[22] Ben Kochman, FBI, Secret Service Warn of Targeted Ransomware, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited Sept. 23, 2025)

[23] See Weak Security Controls and Practices Routinely Exploited for Initial Access (2022) https://www.cisa.gov/news-events/cybersecurity-advisories/aa22-137a.

g. Keep software updated.

88. In order to protect yourself from cyberattacks, including attacks like the one that resulted in this Data Breach, the Defendants could, and should, have implemented the following measures which were suggested by the Washington State Department of Financial Institutions:[24]

a. Be on the lookout for suspicious links, attachments, and downloads;

b. Create and use strong passwords;

c. Use multi-factor authentication whenever possible;

d. Use secure internet communications;

e. Update your anti-virus software regularly; and,

f. Report anything suspicious to your IT department.

89. Furthermore, upon information and belief, Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); and/or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in reasonable cybersecurity readiness.

90. Upon information and belief, Defendants failed to maintain many reasonable and necessary industry standards to prevent a data breach, including the FTC's guidelines.

91. Marquis failed to comply with FTC guidelines regarding data security and First National Bank failed to ensure that its third-party vendor in possession of its clients' PII had adequate security safeguards to prevent unauthorized parties from accessing and exfiltrating PII, like the present case

[24] See Protecting yourself from cyberattacks https://dfi.wa.gov/consumers/cyber-attacks-tips.

92. Due to the fact that First National Bank of Pennsylvania provided Marquis with PII of its customers and Marquis was storing PII of thousands of individuals, Defendants could have and should have implemented these measures and strictly adhered to them to help prevent any potential cyberattacks and ensure that Marquis followed FTC and industry standard practices for data security.

93. However, the Defendants continually failed to implement any of the aforementioned security measures, like password protection, encryption, or multifactor authentication.

94. Among other failures, Marquis had far too much confidential unencrypted PII held on its systems and First National Bank did not ensure that Marquis implemented adequate security safeguards. Such PII should have been segregated into an encrypted system.[25]

95. Due to FTC's data security principles and practices,[26] Defendants failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present customers' PII.

96. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[27] Immediate notification of a data breach is critical so that those impacted can take measures to protect themselves.

97. The Defendants neglected to report the theft of PII for months after the original theft, only worsening the situation for the Plaintiffs and the Class Members.

---

[25] See, e.g., Adnan Raja, How to Safeguard Your Business Data with Encryption, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-dataencryption.

[26] Protecting Personal Information: A Guide for Business, FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited Sept. 23, 2025).

[27] Id.

98. In sum, the Data Breach could have readily been prevented through following FTC guidelines and the use of industry standard network segmentation and encryption of all PII.

99. Given the kind of PII Marquis made accessible to hackers and the delay in notifying Plaintiffs and other Class Members, however, Plaintiffs and the Class Members are certain to incur additional damages.

### *ii. Common Injuries and Damages Suffered by Plaintiffs and Class Members Due to Defendants' Conduct*

100. Plaintiffs' and Class Members' PII was targeted, accessed, and stolen by cybercriminals in the Data Breach.

101. This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running targeted cyberattacks against companies like Marquis is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

102. PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiffs and the Class Members and to profit from their misfortune.

103. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[28]

104. The potential for identify theft has now become a real danger for the Plaintiffs and Class Members, as this occurs when an unauthorized user gains access to a person's personal and financial information.

---

[28] Facts + Statistics: Identity Theft and Cybercrime, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

105. The USA government web portal establishes identity theft as someone using personal information without an individual's permission. This information includes names and addresses, credit card information, Social Security Numbers, bank account numbers, and medical insurance account numbers.[29]

106. With the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[30] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class Members.

107. Social Security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number**. *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[31]

108. PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[32]

---

[29] Identity Theft (USA.gov) https://www.usa.gov/identity-theft

[30] See e.g., Christine DiGangi, What Can You Do with a Stolen Social Security Number, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thiefcan-do-with-your-social-security-number-108597/.

[31] Dark Web Monitoring: What You Should Know, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-youshould-know/ (emphasis added)

[32] Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

109. As such, Plaintiffs and Class Members will have to spend years staying vigilant with their data.

110. Defendants' failure to implement or maintain adequate data security measures for Plaintiffs' and Class Members' PII directly and proximately injured Plaintiffs and Class Members by the resulting disclosure of their PII in the Data Breach.

111. Because of Defendants' failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. Identity theft and fraud;

b. Loss of time to mitigate the risk of identity theft and fraud;

c. Diminution in value of their PII;

d. Out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. Loss benefit of the bargain and opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Loss of the opportunity to control how their PII is used;

h. Compromise and continuing publication of their PII;

i. Unauthorized use of their stolen PII;

j. Invasion of privacy; and,

k. Continued risk to their PII—which remains in Defendants' possession—and is thus at risk for future breaches so long as Defendants fail to take appropriate measures to protect the PII.

112. Because cybercriminals have their PII, Plaintiffs and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.

***e. Plaintiffs' Experiences***

**i. Edythe Bellissimo**

113. Mrs. Bellissimo is a customer of First National Bank.

114. Mrs. Bellissimo opened a checking account with First National Bank.

115. As a condition of receiving services, Mrs. Bellissimo was required to provide her PII to First National Bank.

116. Mrs. Bellissimo provided her PII to First National Bank and trusted that the company would use reasonable measures to protect it according to state and federal law.

117. As a result of First National Bank's inadequate cybersecurity policies reviewing Marquis' cybersecurity protocols and ensuring vulnerabilities were identified and addressed and reasonable safeguards were continuously maintained, and Marquis' inadequate cybersecurity measures and data destruction policies, Defendants exposed Mrs. Bellissimo's PII for theft by cybercriminals.

118. First National Bank and Marquis deprived Mrs. Bellissimo of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Data Breach.

119. Mrs. Bellissimo suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendants were required to adequately protect.

120. As a result of the Data Breach, Mrs. Bellissimo has spent time and made reasonable efforts to mitigate its impact including, but not limited to, researching the Data Breach, reviewing credit card and financial account statements and monitoring her credit information.

121. Mrs. Bellissimo will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Mrs. Bellissimo fears for her personal financial security and uncertainty over what PII was exposed. Mrs. Bellissimo has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

122. Mrs. Bellissimo is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties. This injury is worsened by Defendants' failure to promptly inform Mrs. Bellissimo about the Data Breach.

123. Mrs. Bellissimo has a continuing interest in ensuring that her PII, which, upon information and belief, remains in Defendants' possession, is protected and safeguarded from future breaches.

124. Mrs. Bellissimo also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Breach.

***ii. Jerry Livingston***

125. Mr. Livingston is a customer of First National Bank.

126. Upon information and belief, Mr. Livingston opened a checking account operated by First National Bank and/or one of First National Bank's affiliates from 1999 until 2013.

127. Additionally, upon information and belief, Mr. Livingston had a credit card issued by First National Bank during this time.

128. Mr. Livingston provided his PII to First National Bank and trusted that the company would use reasonable measures to protect it according to state and federal law.

129. As a result of First National Bank's inadequate cybersecurity policies reviewing Marquis' cybersecurity protocols and ensuring vulnerabilities were identified and addressed and reasonable safeguards were continuously maintained, and Marquis' inadequate cybersecurity measures and data destruction policies, Defendants exposed Mr. Livingston's PII for theft by cybercriminals.

130. First National Bank and Marquis deprived Mr. Livingston of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Data Breach.

131. Mr. Livingston suffered actual injury from the exposure of his PII-which violates his rights to privacy.

132. Mr. Livingston suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendants were required to adequately protect.

133. As a result of the Data Breach, Mr. Livingston has spent time and made reasonable efforts to mitigate its impact including, but not limited to, researching the Data Breach, reviewing credit card and financial account statements and monitoring his credit information.

134. Mr. Livingston will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Mr. Livingston fears for his personal financial security and uncertainty over what PII was exposed. Mr. Livingston has and is experiencing

feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

135. Mr. Livingston is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury is worsened by Defendants' failure to promptly inform Mr. Livingston about the Data Breach.

136. Mr. Livingston has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendants' possession, is protected and safeguarded from future breaches.

137. Mr. Livingston also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Breach.

## CLASS ACTION ALLEGATIONS

138. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

139. Plaintiffs bring this action against Defendants on behalf of themselves and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs assert all claims on behalf of a nationwide class (the "Class") defined as follows:

> **All persons whose PII was compromised in the Data Breach, including all individuals who were sent a Notice Letter after the Data Breach**.

140. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

141. Plaintiffs reserve the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

142. Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

143. The proposed Class meets the requirements of Federal Rule of Civil Procedure 23.

144. **Numerosity**: The proposed Class is so numerous that joinder of all members is impracticable. Although the true number of affected individuals is unknown to Plaintiffs, it is estimated that the Breach affected at least 217,000 individuals. The number of affected individuals may be obtained by Defendants' records.

145. **Typicality**: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Members of the Class were injured through Defendants' uniform misconduct. Defendants' inadequate data security gave rise to Plaintiffs' claims and are identical to those that give rise to the claims of every other Class Member because Plaintiffs and each Member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendants.

146. **Adequacy**: Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

147. **Superiority**: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of

complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

148. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other Members of the Class, and those questions predominate over any questions that may affect individual Members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein;

b. Whether Defendants failed to adequately safeguard Plaintiffs' and the Class' PII;

c. Whether Defendants owed a duty to Plaintiffs and the Class to adequately protect their PII, and whether they breached this duty;

d. Whether Defendants breached their duties to Plaintiffs and the Class;

e. Whether Defendants failed to provide adequate cybersecurity;

f. Whether Defendants knew, or should have known, that their computer and network security systems were vulnerable to cyberattacks;

g. Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Breach of their company network;

h. Whether Defendants were negligent in permitting unencrypted PII of vast numbers of individuals to be stored within their network;

i. Whether First National Bank failed to ensure its vendor, Marquis, implemented and maintained reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

j. Whether Defendants were negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

k. Whether Defendants breached implied contractual duties to Plaintiffs and the Class to use reasonable care in protecting their PII;

l. Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

m. Whether Defendants continue to breach duties to Plaintiffs and the Class;

n. Whether Plaintiffs and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

o. Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief; and,

p. Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiffs and Class Members are entitled to punitive damages.

149. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendants would

necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

150. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

151. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

152. Policies Generally Applicable to the Class. This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## NEGLIGENCE
## (On behalf of Plaintiffs and the Class)

153. Plaintiffs reallege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

154. First National Bank solicited, gathered, and stored the PII, including names, Social Security numbers, and other PII of Plaintiffs and Class Members.

155. Implied in these exchanges was a promise by Defendants to ensure that the PII of Plaintiffs and Class Members in their possession was only used for the provided purpose and that Defendants would destroy any PII that it was not required to maintain.

156. Marquis solicited, gathered, and stored the PII of Plaintiffs and Class Members through First National Bank.

157. First National Bank had full knowledge of the sensitivity of the PII entrusted to it and shared it with Marquis, and the types of harm that Plaintiffs and Class Members could and would suffer if the PII was wrongfully disclosed.

158. Marquis was aware of the fact that cybercriminals routinely target companies and corporations through cyberattacks in an attempt to steal PII.

159. In other words, Marquis knew of a foreseeable risk to their data security systems but failed to implement reasonable security measures.

160. Plaintiffs and Class Members were the foreseeable victims of any inadequate safety and security practices.

161. Plaintiffs and the Class Members had no ability to protect their PII that was in Defendants' possession.

162. As such, a special relationship existed between Defendants and Plaintiffs and the Class.

163. By collecting, accepting, storing, and sharing Plaintiffs' and Class Members' PII, First National Bank had a duty of care to require and ensure Marquis used adequate security to secure and safeguard it, prevented disclosure of the information, and safeguarded the PII from theft.

164. First National Bank's duty of care obligated it to require and ensure Marquis implemented processes by which it could detect if its network was breached or if PII was exposed to unauthorized actors.

165. By accepting, collecting, and storing First National Bank's customers' PII, Marquis took on the obligation and duty to safeguard the highly sensitive PII from unauthorized disclosures, but failed to do so.

166. Marquis had the duty to ensure it complied with FTC and industry standards practices related to protecting highly sensitive PII.

167. Defendants had a duty to perform with skill, care, and reasonable expedience and faithfulness in protecting the PII of Plaintiffs and Class Members in their possession.

168. Defendants owed Plaintiffs and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining storing, using, and managing PII, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiffs and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

169. Defendants' duty extended to protecting Plaintiffs and the Class Members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where

the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

170. Additional duties that Defendants owed Plaintiffs and the Class Members include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class Members' PII was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiffs' and Class Members' PII in their possession by using reasonable and adequate security procedures and systems;

c. To ensure that its vendor implemented FTC and industry standard security measures to protect the PII;

d. To implement processes to quickly detect a data breach, security incident, or intrusion involving their networks, email accounts, and servers; and,

e. To promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PII.

171. Defendants breached their duties of care by failing to adequately protect Plaintiffs' and Class Members' PII.

172. Defendants breached their duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting the PII in their possession;

b. Failing to protect the PII in their possession using reasonable and adequate security procedures and systems;

c. Failing to ensure that its vendor had adequate security measures to protect Plaintiffs' and Class Members' PII;

d. Failing to consistently enforce security policies aimed at protecting Plaintiffs' and Class Members' PII;

e. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and,

f. Failing to promptly notify Plaintiffs and Class Members of the Data Breach that affected their PII.

173. Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

174. As a direct and proximate cause of Defendants' conduct including, but not limited to, their failure to implement and maintain reasonable security practices and procedures, Plaintiffs and Class Members have suffered, and/or will suffer, injury and damages, including but not limited to:

a. The loss of the opportunity to determine for themselves how their PII is used;

b. The publication and/or theft of their PII;

c. Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII, including the need for substantial credit monitoring and identity protection services for an extended period of time;

d. Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft;

e. Costs associated with placing freezes on credit reports and password protections;

f. Anxiety, emotional distress, loss of privacy, and other economic and non-economic losses;

g. The continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of their clients' customers in their continued possession; and,

h. Future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII for the rest of their lives.

175. The costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII for the rest of their lives.

176. Plaintiffs and the Class Members have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

177. Through Defendants' failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, Defendants prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII and mitigating damages.

178. For example, Plaintiffs and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

179. Plaintiffs and Class Members are within the class of persons the FTC Act and the Safeguards Rule were intended to protect.

180. The type of harm that resulted from the Data Breach was the type of harm the FTC Act and the Safeguards Rule were intended to guard against.

181. Marquis' failure to comply with, and First National Bank's failure to ensure its third-party vendor complied with the FTC Act and the Safeguards Rule is negligence per se.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

182. Plaintiffs reallege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

183. Defendants required Plaintiffs and Class Members to provide and entrust their PII to Defendants as a condition of obtaining Defendants' services.

184. Plaintiffs and the Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect their PII and to timely and accurately notify Plaintiffs and Class Members that their information had been breached and compromised.

185. At the time Defendants acquired the PII of Plaintiffs and the Class Members, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the PII and not take unjustified risks when storing the PII.

186. First National Bank entered into implied contracts with Plaintiffs and Class Members by collecting their PII and promising to safeguard it against unauthorized disclosures.

187. Marquis entered into implied contracts with Plaintiffs and Class Members by accepting, collecting, storing, and maintaining the PII given to it by First National Bank in exchange for safeguarding the PII from unauthorized disclosures.

188. Defendants' adequate protection of Plaintiffs' and Class Members' PII was a material aspect of these implied contracts.

189. The implied promise included consideration beyond those pre-existing general duties owed under state and federal regulations.

190. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines and industry standards on data security.

191. The implied promises include, but are not limited to:

a. Taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data;

b. Taking steps to ensure that the PII that is placed in the control of their agents is restricted and limited to achieve an authorized purpose;

c. Restricting access to qualified and trained agents;

d. Designing and implementing appropriate retention policies to protect the PII against data breaches;

e. Applying or requiring proper encryption;

f. Applying or requiring multifactor authentication for access; and,

g. Other steps to protect against foreseeable data breaches.

192. Based on this implicit understanding, Plaintiffs and Class Members accepted Defendants' offers and provided Defendants with their PII in reliance on Defendants' promises.

193. Without the PII provided by Plaintiffs and Class Members, Defendants could not derive revenue from their regular business activities. A portion of the revenue derived from the services provided to Plaintiffs and Class Members was to be used to provide a reasonable level of data security and reasonable data security practices. The amount of revenue to be allocated to data security is known to Defendants.

194. Defendants accepted possession of Plaintiffs' and Class Members' PII for the purpose of providing goods and services and implicitly agreed to protect their PII from data breaches and keep it confidential and secure.

195. Plaintiffs and Class Members would not have permitted their PII to be collected and stored by First National Bank of Pennsylvania had they known that First National Bank of Pennsylvania's third-party vendor, Marquis, would not safeguard their PII, as promised, or provide timely notice of a data breach.

196. Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendants.

197. Both Marquis and First National Bank breached the implied contracts with Plaintiffs and Class Members by failing to protect their PII from cybercriminals.

198. Defendants materially breached the implied contracts by:

a. By failing to safeguard Plaintiffs' and Class Members' PII;

b. By failing to adhere to FTC guidelines and industry standards;

c. By failing to ensure that its vendor, Marquis, had adequate safeguards to protect the PII; and,

d. By failing to provide Plaintiffs and Class Members with timely and accurate notice of the Data Breach.

199. As a direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class Members and the consequential Data Breach, Plaintiffs and Class Members have suffered injuries and damages and have been irreparably harmed.

200. Plaintiffs and Class Members did not receive the full benefit of their bargains with Defendants and instead received services of a diminished value compared to that described in the implied contracts.

201. Upon information and belief, Defendants have not provided Plaintiffs and the Class Members with information regarding the root cause of the Data Breach and the steps Defendants are taking to ensure that the PII remains safe and protected from further disclosures.

202. The losses and damages Plaintiffs and Class Members sustained were the direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class Members.

203. Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or restitution, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**

204. Plaintiffs reallege and incorporate by reference all preceding factual paragraphs as though fully set forth herein.

205. Plaintiffs allege this claim in the alternative of their Breach of Implied Contract claim.

206. Defendants knew that Plaintiffs and Class Members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the PII entrusted to them.

207. Defendants profited from Plaintiffs' and Class Members' retained data and commercialized and used Plaintiffs' and Class Members' PII for business purposes.

208. Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including payments on behalf of or for the benefit of Plaintiffs and Class Members.

209. As such, a portion of the payments made for the benefit of or on behalf of Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

210. Defendants failed to secure Plaintiffs' and Class Members' PII and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their PII provided.

211. Defendants acquired the PII through inequitable means as they failed to disclose the inadequate data security practices previously alleged.

212. If Plaintiffs and Class Members had known that Defendants would not fund adequate data security practices, procedures, and protocols to sufficiently monitor, supervise, and secure their PII, they would not have entrusted their PII to First National Bank and Marquis, through First National Bank, nor would have obtained services from Defendants.

213. Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures, including measures to adequately supervise Marquis' cybersecurity while profiting from sharing and using that same PII.

214. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants calculated to increase their own profits at the expense of Plaintiffs and Class Members by permitting Marquis to use cheaper, ineffective security measures, and diverting those funds to Defendants' own pockets.

215. Plaintiffs and Class Members have no adequate remedy at law.

216. Plaintiffs and Class Members, on the other hand, suffered a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of customers' PII.

217. Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

218. First National Bank derived a monetary benefit from Plaintiffs and Class Members through the collection of PII in exchange for services.

219. Marquis derived a monetary benefit from Plaintiffs and Class Members through First National Bank using Marquis as its third-party vendor to maintain, store, and protect the PII.

220. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered actual harm in the form of experiencing specific acts of fraudulent activity and other attempts of fraud that required Plaintiffs' and Class Members' efforts to prevent them from succeeding.

221. As a result of Defendants' wrongful conduct, as alleged above, Plaintiffs and the Class Members are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendants and all other relief allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members pray for judgment against Defendants as follows:

A. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

B. A judgment in favor of Plaintiffs and the Class Members awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

C. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

D. An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

E. A judgment in favor of Plaintiffs and the Class Members awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowed by law; and,

F. An award of such other further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: January 14, 2026

By: */s/ Sara J. Watkins*

Sara J. Watkins, Esquire
PA ID NO.: 325770
D. Aaron Rihn, Esquire
PA ID NO.: 85752
Stanley D. Ference IV, Esquire
PA ID NO.: 336090
ROBERT PEIRCE & ASSOCIATES, P.C.
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel: 412-281-7229
Email: swatkins@peircelaw.com
arihn@peircelaw.com
mference@peircelaw.com

*Attorneys for Plaintiffs and the Class Members*